531 P.2d 204

**Kermit C. BURTON, Appellant,**

v.

**Joan C. BURTON, Appellee.**

**No. 2 CA–CIV 1716.**

Court of Appeals of Arizona, Division 2.

Jan. 28, 1975.

Rehearing Denied March 4, 1975.
Review Denied April 15, 1975.

Knez, Glatz & Crites by Richard D. Crites, Tucson, for appellant.

Kain & Geyler by Sidney L. Kain, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This appeal raises three issues: (1) Whether the court below abused its discretion by awarding custody of the family's two children to appellee; (2) whether the court below erroneously divided the property of the family; and (3) whether the court below erred in ordering that appellant pay appellee's attorney's fees and court costs.

## CHILD CUSTODY

Appellant and appellee were married in Illinois on June 18, 1960. The couple had two children, Bradley, who was 11½ at the time of the dissolution hearing, and Brett, who was 10 years old at the time of hearing. Because of Brett's severe asthma, appellee and the two children moved to Tucson in 1970 for a trial period. Appellant remained in Illinois. After several months in Tucson, Brett's health began to improve and a decision was made to permanently move to Tucson. Appellant stayed in Illinois until December 9, 1970, to wind up the family's farming business and sell off the farm assets. Both appellant and appellee held down jobs in Tucson, appellant working for Tucson Gas and Electric and appellee working as a real estate sales agent; she currently is employed as a re-

ceptionist and financial adviser for an attorney.

While working in real estate, appellee became romantically involved with one of the real estate brokers in her office. At approximately the same time marital difficulties arose between appellant and appellee, until on January 23, 1973, appellee told appellant to leave the family home. Thereafter, the evidence showed that appellee and her real estate broker took her children to see a movie and to play miniature golf. Also, they took Bradley out to dinner once. These activities were halted by an injunction issued on June 20, 1973, which also granted appellant . visitation rights every week-end from 6:00 p. m. Friday until 9:00 p. m. Sunday and every Wednesday from 6:00 p. m. until 9:00 p. m. Appellant's visitation rights were to be exercised in his own abode.

On May 28, 1974, the marriage of appellant and appellee was dissolved and the permanent care, custody and control of the children was awarded to appellee. Appellant claims that this was erroneous because of the "uncontradicted evidence . . . of the moral unfitness of appellee. . . ." Appellant refers this court to five examples of appellee's indiscretions which reveal her unfitness. They are: (1) That she wore short skirts; (2) that she established a "pattern of coming home from work as late as 6:30 or 7:00 o'clock in the evening for approximately nine months prior to the separation of the parties"; (3) that she associated the children with the broker while both she and he were still married; (4) that she manifested her affection toward the broker in front of her children by kissing him and holding his hand; and (5) that she spent two or three week-end nights with the broker at his apartment.

▆ A.R.S. § 25–332 decrees that, The court shall determine custody . . . in accordance with the best interests of the child." We should only reverse a custody order if we find that the court below has abused its discretion. Le Roy v.

Odgers, 18 Ariz.App. 499, 503 P.2d 975 (1972). Examining the record, we cannot find any abuse of discretion.

Appellant claims that appellee's indiscretions are analogous to the nefarious activities described in Anonymous v. Anonymous, 7 Ariz.App. 63, 436 P.2d 157 (1968); later appeal, 106 Ariz. 284, 475 P.2d 268 (1970). The two cases are qualitatively different. The evidence does not sustain the conclusion that appellee engaged in a "shameless rampage of adultery" which amounted "to a virtual abandonment of" her children. Furthermore, we note that when our Supreme Court was presented with the problem in Anonymous v. Anonymous, supra, it refused to find any abuse of discretion in awarding custody to the wife.

For the court below to have awarded custody to appellant, it would have had to find not only that appellee was an inadequate custodian, but also that appellant was better. There was sufficient evidence to cast grave doubts on the latter condition. For example, one day appellant returned Brett to appellee. Brett's "lips had become very dark, purplish, like when he's having difficulty breathing . . . ." Appellee could not tell her physician what medication Brett had taken because appellant deposited the children without saying one word to appellee. The child was rushed to the hospital emergency room and required cortisone treatment. One would be hard pressed to find that this level of attention and care showed appellant's fitness. Furthermore, expert testimony indicated that while appellant would be an adequate parent he had a tendency to be too rigid. A vivid example of this rigidity occurred at the ceremony during which Bradley became a Boy Scout. It is traditional for both parents to accompany the boy through his initiation. Nevertheless, appellant abstained from participating in the ceremony because throughout these domestic problems appellant has refused to talk to or associate with appellee. Finally, from the evidence, the judge could well have found that appellant was unwilling and unable to

perform normal domestic duties which would be important if he took custody of the children. When these deficiencies are balanced against the proven ability of appellee to raise children who perform satisfactorily in society and school, we cannot say that the court below abused its discretion.

## DIVISION OF PROPERTY

The trial court awarded appellee the family residence, household furniture, fixtures and equipment, and a 1972 Chevrolet automobile. Appellant was awarded a $20,000 Certificate of Deposit, a 1966 Chevrolet automobile and four life insurance policies. Each party was awarded his or her personal effects. Appellant claims that the court erred in awarding appellee the residence.

Until the move to Tucson, the parties lived on a farm in Illinois which contained 240 acres of tillable soil. Appellant's father had a life estate in the farm with the remainder to the appellant upon his father's death. From 1960 to 1969 the parties lived on the farm as did appellant's parents. Appellant worked part-time on the farm and also worked for the Agricultural Stabilization Conservation Service (ASCS) from whom he drew a salary.

In 1969 appellant took over the entire farming operation but also continued his job with ASCS. In exchange for the forgiveness of a $10,000 debt owed to appellant by his father, appellant was given ownership of the farm machinery, the livestock and any other stored crops or personal chattels on the farm. There were also some hogs which appellant already owned.

While on the farm, in addition to her regular household chores, appellee did the bookkeeping for the farm operation, ran the tractor in connection with the baling of 2,000 to 3,000 bales of hay per year,

washed and groomed cattle for the cattle sales (there were five to seven cattle sales each year) and helped in caring for the hogs.

When the parties came to Arizona the appellant sold the farm machinery, livestock, crops, hogs and personal assets for about $25,000 net.

The residence was taken in the name of both parties as husband and wife. The gross sales price was $22,372.79. The down payment of $14,500 was derived from the following sources: $6,500 borrowed against appellant's life insurance policies; $4,895 received from the United States Department of Agriculture for not planting certain crops; and the rest from the sale of the aforementioned farm assets. A mortgage for the balance was placed on the property and monthly payments have been made from community funds.

The $20,000 Certificate of Deposit represents the proceeds from the sale of the farm assets.

Appellant claims that since the residence was purchased with his separate funds, the court erred in awarding the residence to appellee. The first barrier which appellant must hurdle is the fact that the deed to the residence is in the name of both parties as husband and wife. Since the evidence shows a purchase with separate property and fails to show that the insertion of the wife's name in the deed and mortgage was by the direction of the husband, appellant has successfully negotiated the hurdle. Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948); Bourne v. Lord, 19 Ariz.App. 228, 506 P.2d 268 (1973).

We are thus faced with the situatn which was before us in Rau v. Rau, 6 Ariz.App. 362, 432 P.2d 910 (1967) [1] and we look to the State of Illinois to determine how the property should be divided.

1. The trial court based its judgment on application of both the Illinois law and the recently amended A.R.S. § 25–318. Reliance on the statute was not correct since the property was acquired prior to its enactment. See Oppenheimer v. Oppenheimer, 22 Ariz. App. 238, 526 P.2d 762 (1974).

Section 18, Ill.Annot.Stat. c. 40 (1956) provides:

"Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

The foregoing statute has remained intact as part of the Divorce Act since 1874.

In Anderson v. Anderson, 380 Ill. 435, 44 N.E.2d 54, 57 (1942), the court interpreted the Illinois law:

"Where, however, the wife has from equitable considerations, other and additional interests in her husband's property than such as attach to her status as a wife, as, for example, if her money came into the hands of the husband and has been invested by him in real estate to which he holds the title, or if her earnings and savings have gone into his possession and aided him in acquiring the real estate, or if the real estate represents the joint earning, work or savings of the parties, the court may properly, when dissolving the marriage relation, decree that the wife shall be vested with the title in fee to such real estate or some other real estate belonging to the husband, in order to effect an equitable and fair adjustment of the property rights of the parties."

Under the facts of this case the wife is entitled to an equitable interest in the farm assets.

Appellant claims that even if the wife can have an equitable interest in the house it cannot attach to that portion of the down payment which came from his life insurance policies. In other words, the equitable interest can only exist in that specific property to which the wife contributed money or labor. This position is without merit. In order to affect an equitable and fair adjustment of property rights the wife can be given title to other property of the husband. Anderson v. Anderson, supra. That is what was done by the trial court in the case at bench, and it did not err.

ATTORNEYS' FEES

Appellant claims that the court erred in ordering that he pay $4,979.35 as appellee's attorneys' fees and costs. Appellee's brief is devoid of any response, and, if a debatable issue is raised, then appellee's silence will be taken as a confession of reversible error. Liberty Mutual Ins. Co. v. MacLeod, 17 Ariz.App. 449, 498 P. 2d 523 (1972). Because A.R.S. § 25–324 permits the award of litigation expenses "after considering the financial resources of both parties" and because the record is mute on this subject, we believe that a debatable issue was raised and reverse this portion of the decree.

The judgment of the court below is affirmed with the exception of that portion of the decree ordering that appellant pay appellee's attorneys' fees and costs.

HATHAWAY and KRUCKER, JJ., concur.