595 P.2d 1196

**Oscar W. STEPHENS,**
**Petitioner-Appellee,**

v.

**Joyce STEPHENS,**
**Respondent-Appellant.**

No. 11985.

Supreme Court of New Mexico.

May 15, 1979.

Coors, Singer & Broullire, Robert N. Singer, Albuquerque, for respondent-appellant.

Rowley, Hammond, Rowley & Tatum, Richard R. Rowley, II, Clovis, for petitioner-appellee.

Margaret Young, Martha C. Salvant, Washington, D.C., for amicus curiae WEAL Fund.

## OPINION

McMANUS, Senior Justice.

This appeal arises from a judgment granting a dissolution of marriage and a division of property.

Colonel Stephens, petitioner-appellee, and Mrs. Stephens, respondent-appellant, were married on June 26, 1954 in Coldwater, Michigan. At the time of the marriage, Colonel Stephens was attending the University of Tennessee Dental School. He entered the United States Air Force after graduation, and, except for a brief period, has been so employed ever since. The trial court found that if Colonel Stephens were to retire at the present time, he would receive 67.5% of his base monthly pay of $2,670.00, or $1,802.25 each month for life. The trial court also determined that Colonel Stephens had completed 327 months in the Air Force and that 54 of these months were spent in New Mexico. From these figures, the trial court concluded that the community interest in Colonel Stephens' tour of duty in the service was 16.5% and that Mrs. Stephens' interest was 8.25%. Colonel Stephens was ordered to pay Mrs. Stephens the sum of $148.68 per month (8.25% of $1,802.25) if and when he receives his retirement benefits.

Mrs. Stephens contends that the trial court should have awarded her an equal share of Colonel Stephens' retirement benefits. Mrs. Stephens argues that an equal division is mandated by the law of New Mexico, or alternatively, by the law of Ten-

nessee. We hold that under the facts of this case, the law of Tennessee must govern the distribution of Air Force retirement benefits.

This Court first discussed the division of military retirement benefits in *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969). In that case, the Court held that retirement benefits were a mode of employee compensation and that the portion of the benefits earned during coverture became community property.

In *Otto v. Otto*, 80 N.M. 331, 455 P.2d 642 (1969), this Court set forth the general rule that the character of retirement pay is determined by the law of the state where it is earned. If the retirement benefits were earned in a community property state during coverture, they are community property. However, if the retirement benefits were earned in a non-community property state during coverture, they are the separate property of the retired employee.

In *Hughes v. Hughes*, 91 N.M. 339, 573 P.2d 1194 (1978), this Court recognized that separate property as defined in common-law jurisdictions is not the same creature as separate property under community property law. *See, e. g., Burton v. Burton*, 23 Ariz.App. 159, 531 P.2d 204 (1975); *Rau v. Rau*, 6 Ariz.App. 362, 432 P.2d 910 (1967); *Berle v. Berle*, 97 Idaho 452, 546 P.2d 407 (1976). In *Hughes*, the Court stated:

> There are two distinct interpretations. Although wives in common-law states have no *legal title* to property purchased with the husband's earnings, the case law in those states has created many benefits, incidents, and immunities in favor of wives that attach themselves to such separate marital property. Therefore the wife, in many common-law states * * has inchoate equitable rights to her husband's separate property where she has made contributions to preserving and bettering that property, whereas in a typical community property state she has no such rights since she has community property rights instead. There is an obvious difference between property which *first* acquires its separate nature while the hus-

band is domiciled in a community property state and his separate property that can be traced to property acquired in a common-law state where the wife has inchoate equitable rights in that property. 91 N.M. at 344, 573 P.2d at 1199. In *Hughes* the parties were originally domiciled in Iowa, a common-law state, where a wife has no vested legal interest in the wages of the husband or in property purchased with those wages. The parties later became domiciliaries of New Mexico, and money accumulated solely from the wages of the husband while the parties were in Iowa was used as the down payment on some ranch property and apartments located in New Mexico. The Court was asked to determine what the wife's interests were in the earnings from her husband's separate estate. The Court ruled:

> Although the property traceable to Col. Hughes' earnings was clearly his separate property, we hold that the characterization of this property as separate must be made under the applicable laws of the State of Iowa and therefore the property is subject to all the wife's incidents of ownership, claims, rights and legal relations provided in any and all of the laws of the State of Iowa that affect marital property.

91 N.M. at 346, 573 P.2d at 1201.

Mrs. Stephens argues that the community property legislation and the announced public policy of this state require an equal division of Colonel Stephens' retirement benefits.

Section 40–3–8, N.M.S.A. 1978 defines separate and community property as follows:

A. "Separate property" means:

(1) property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage;

(2) property acquired after entry of a decree entered pursuant to Section 40–4–3 NMSA 1978 unless the decree provides otherwise;

(3) property designated as separate property by a judgment or decree of any court having jurisdiction;

(4) property acquired by either spouse by gift, bequest, devise or descent;

(5) property designated as separate property by a written agreement between the spouses; and

(6) each spouse's undivided interest in property owned in whole or in part by the spouses as cotenants in joint tenancy or as cotenants in tenancy in common.

B. "Community property" means property acquired by either or both spouses during marriage which is not separate property.

Mrs. Stephens argues that since the statute does not differentiate between property acquired in New Mexico and property acquired in other states, New Mexico courts are directed to presume that *all* property acquired during coverture, regardless of the situs of acquisition, is community property.

Mrs. Stephens also argues that an equal division of the retirement benefits is necessary to effectuate the policies announced by this Court in *Hughes* :

Under community property law no distinction is made between husband and wife in respect to the right each has in the community property. The husband receives no higher or better title than does the wife. The plain public policy that this law expresses is that the wife shall have equal rights and equal dignity and shall be an equal benefactor in the matrimonial gain. "It is altogether fitting and proper that woman should be thus esteemed by the law in fixing her status if she is to be considered in fact as well as in theory an essential factor in the economy of the marital community." *La Tourette v. La Tourette*, 15 Ariz. 200, 137 P. 426, 428 (1914).

91 N.M. at 343, 573 P.2d at 1198. Mrs. Stephens submits that the fact of acquisition of property during coverture, and not the place or circumstances of acquisition, must take paramount consideration. She argues that the New Mexico courts should stand upon their own social and judicial principles and avoid the complex conflicts of law problems the court is presently forced to resolve.

Mrs. Stephens is asking this Court to adopt the same concept espoused in California's "quasi-community property" legislation. Cal.Civ.Code §§ 4800 and 4803 (West) (Supp.1977) designates property acquired by a person domiciled outside California, which property would be separate property by the law of that domicile but which would have been community property if acquired while in California, as quasi-community property. Upon divorce, quasi-community property is to be divided the same way as community property. The California Supreme Court held this statute constitutional in *Addison v. Addison*, 62 Cal.2d 558, 43 Cal.Rptr. 97, 399 P.2d 897 (1965).

While the California lawmakers seem to have found a very desirable solution for avoiding conflicts of law problems, our Legislature has not yet done so. Therefore, we must follow the law set forth in *Hughes*. Mrs. Stephens' interest in her husband's retirement benefits must be determined according to the law of the state where the benefits were acquired.

The record indicates that throughout the course of their marriage, the parties have been stationed in various places in the United States and foreign countries. However, Colonel Stephens has always named Tennessee as his designated home state. In *Blessley v. Blessley*, 91 N.M. 513, 577 P.2d 62 (1978) this Court stated that the domicile of armed forces personnel is not, in the absence of any intent to effect a change of domicile, affected or changed by reason of his entering the military. A member of the armed forces "does not, merely by reason of entry into the service, abandon or lose the domicile which he had when he entered, or acquire a new one at the place where he serves. [Citations omitted.]" *Id.* at 514, 577 P.2d at 63. In this case, the record does not show any intent on Colonel Stephens' part to affirmatively establish domicile in a state other than Tennessee. Therefore, we must apply Tennessee law in determining Mrs. Stephens' interest in her husband's retirement benefits.

**4**

By statute, a Tennessee court may decree to the wife such part of the husband's real and personal estate as it may think proper. Tenn.Code Ann. § 36–821, 1955 (Repl. 1977). In dividing property under § 36–821, Tennessee courts have awarded all or any part of the husband's estate according to the facts and circumstances of each particular case. *Williams v. Williams*, 146 Tenn. 38, 236 S.W. 938 (1922); *Rains v. Rains*, 58 Tenn.App. 214, 428 S.W.2d 650 (1968); *Mount v. Mount*, 46 Tenn.App. 30, 326 S.W.2d 493 (1959). Property rights are settled upon equitable principles. *Trimble v. Trimble*, 224 Tenn. 571, 458 S.W.2d 794 (1970); *Langford v. Langford*, 220 Tenn. 600, 421 S.W.2d 632 (1967); *Kittrell v. Kittrell*, 56 Tenn.App. 584, 409 S.W.2d 179 (1966). When determining what portion of the husband's separate estate will be awarded to the wife, courts consider to what extent the wife has contributed to the production, care, and maintenance of the husband's estate, to what extent the wife has contributed to the care and support of the children, each party's present financial condition, and in rare cases, the husband's misconduct. *Langford, supra; Williams, supra; Newberry v. Newberry*, 493 S.W.2d 99 (Tenn.App.1973); *Kittrell, supra; Mount, supra.*

In this case, the record indicates that during the course of their marriage, Mrs. Stephens directed her efforts to serving her husband and children as a wife, mother and homemaker. Colonel Stephens achieved his own financial stature in large part as a result of the labor of Mrs. Stephens on his behalf. The record also indicates that Colonel Stephens has a high earning capacity and an ability to earn in the future, but that Mrs. Stephens has a very limited present and future earning capacity.

When the facts of this case are viewed in light of Tennessee statutory and case law, it is our opinion that Mrs. Stephens is entitled to a one-half interest in Colonel Stephens' retirement benefits. Therefore, we reverse the trial court's decision insofar as it pertains to Colonel Stephens' retirement benefits. We remand this case to the trial court for entry of judgment in accordance with this opinion.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI, J., concur.