**Ann Hennigan STURGIS,**
**Petitioner-Appellant-Respondent,**

v.

**Malcolm B. STURGIS,**
**Respondent-Appellant-Respondent.**

**Nos. 45990, 46052.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 20, 1983.

Carroll J. Donohue, Mark G. Zellmer, St. Louis, for Ann Hennigan Sturgis.

G. William Weier, Ward F. Fickie, St. Louis, for Malcolm B. Sturgis.

SNYDER, Presiding Judge.

This is an appeal and a cross-appeal from a marriage dissolution decree. Husband maintains that the trial court erred in its classification of property as separate or marital and in its award of attorney's fees. Both sides contest the division of marital property and the award of periodic maintenance to wife. Wife also alleges error in the trial court ruling that husband was not bound by a separate agreement that he pay temporary maintenance of $1,500 per month. The judgment is affirmed in part, reversed in part, and the cause remanded.

The parties were married on May 30, 1976. Both were in their fifties and had emancipated children from previous marriages.

Husband was a businessman both before and during the marriage. His premarital assets, of substantial value, included: (1) two closely-held corporations which he had

founded, Sturgis Equipment Company of Kansas City, and M.B. Sturgis, Inc., and a sole proprietorship, Sturgis Air Service; (2) stocks and bonds; (3) a profit-sharing plan, a Keough plan, and life insurance policies; and (4) a bank account at the St. Louis County National Bank numbered 136–685–2.

Wife was a college graduate and a computer consultant. She, too, had acquired substantial assets prior to the marriage. They consisted of stocks and bonds, and a residence at 12 Maryhill in Ladue, Missouri.

During the marriage, the parties each maintained separate bank accounts. In addition, a joint bank account was used for household expenses and funded solely by the husband. Husband deposited into his separate account, no. 136–685–2, the following sums: his salary from Sturgis Equipment Company of Kansas City; "consultant fees" from Sturgis Equipment Company (not the same as Sturgis Equipment Company of Kansas City); proceeds from the sale of Sturgis Equipment Company; income from trusts set up by his parents; proceeds from the sale of securities; and some funds from wife.

Wife sold the Maryhill residence to husband approximately nine months after the marriage for $75,000. Funds from account no. 136–685–2 were used to pay for it. Husband than purchased a residence at 118 Ambleside Lane in St. Louis County for $166,000. The purchase price of the new residence was paid from the proceeds of two loans. One promissory note for a so-called "gap loan," was signed only by husband and secured by a deed of trust on the Maryhill property signed by both parties; the other promissory note was signed by both husband and wife and secured by a deed of trust on the Ambleside property, again signed by both parties. Husband later sold 12 Maryhill for $135,000 and paid off the gap loan.

The trial court found that husband was guilty of marital misconduct. There was evidence that he had choked and beat wife while the two were vacationing in Portugal.

After the parties separated, but prior to dissolution, they entered into an out-of-court temporary maintenance agreement by which husband would pay wife $1,500 a month in return for a promise to expedite resolution of the case. No court order was ever entered. After making five monthly payments, husband refused to comply further with the agreement, apparently because the case had not been moved as quickly as promised, and reduced the payments to $600 a month. On November 5, 1981, wife filed a motion asking the court to compel compliance with the agreement. That motion also requested that the monthly payments be increased to $2,500 a month. The motion was denied.

The marriage of the parties was dissolved on June 4, 1982. The trial court set aside to wife separate property valued at $211,434 and awarded her marital property valued at $222,761 for a total of $434,195. Husband was awarded his separate property, valued at $162,700, and marital property valued at $482,523 for a total of $645,223. Wife was also awarded maintenance of $800 a month and attorney fees of $15,992.01.

Other pertinent evidence will be reviewed under the appropriate issue.

On appeal, husband raises seven points of error. Five of those alleged errors deal with the classification of property as separate or marital and the division of marital property. He also contends that the awards of $800 per month maintenance and attorney's fees of $15,992.01 to wife were excessive.

Wife raises three points on appeal. First, she avers that the $800 per month maintenance award was grossly inadequate. Second, she contends she was awarded an inadequate share of marital property. Finally, she argues that the trial court erred in overruling a motion to compel compliance with the temporary maintenance agreement.

The first issue which must be resolved is the classification and division of property. Husband specifically contests the designation of the following as marital property: the Ambleside residence; M.B. Sturgis, Inc. —account receivable and 100 percent of the stock; Sturgis of Kansas City—account re-

ceivable and 100 percent of the stock; the Sturgis Air Service, a sole proprietorship; a Keough plan balance; the cash value of five policies of life insurance; account no. 136–685–2 in the St. Louis County National Bank; Republic of Texas Corp. stock; Storer stock; Allied Bancshares stock and shares in the Dreyfus Money Market Fund.

■ In reviewing the evidence, it is necessary to point out the decree or judgment of the trial court will be sustained by this court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

Section 452.330(2) RSMo.1978 defines marital property as all property acquired subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage.

"All property acquired by either spouse subsequent to the marriage and prior to the decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property ... the presumption of marital property is overcome by a showing that the property was acquired by a method [listed above.]" § 452.330(3) RSMo.1978.

Much of the property ·at issue here was purchased with funds from husband's St. Louis County National Bank checking account. The trial court found that asset to be marital property on a theory of commin-

gled funds. Thus, it is necessary to first determine whether the checking account constituted marital property and if it did, whether items purchased with funds from the account are automatically rendered marital property.

The trial court did not err when it ruled the account to be marital property.

Husband testified the St. Louis County National Bank checking account, a "maximizer account," was the successor to a savings account and checking account. The balance in the two accounts at the time of the marriage was $43,000. All funds that came to husband in the form of salaries, dividends, stock payments, interest, bonuses, commissions, consulting fees and inheritance proceeds were deposited in the account. Husband testified that he considered the account to be personal and separate property, and that its funds were generally used to buy and sell securities. Wife contributed a few checks for comparatively small amounts to the account. She also maintained a separate checking account. A joint checking account funded solely by husband, was maintained for household expenses and was drawn on by both parties.

The trial court found account no. 136–685–2 to be marital property because husband's separate funds were commingled with marital funds. Therefore, the court held, any property purchased with funds from the account was marital property. The trial court's ruling was correct.

■ Where marital property and nonmarital property are commingled and then exchanged for new property, the newly acquired asset is marital property. *Marriage of Badalamenti,* 566 S.W.2d 229, 236[4] (Mo. App.1978). Similarly, when both marital and nonmarital funds are deposited in the same account, those funds become marital property. "In commingling his own assets with marital assets, the spouse has failed to sufficiently segregate his own property.... Such commingling is indicative of an intent on the part of the owner of· the pre-marriage property to contribute it to the marital estate." *Jaeger v. Jaeger,* 547

S.W.2d 207, 211[5] (Mo.App.1977). It makes no difference whether title to the property acquired is held individually. § 452.330(2) RSMo.1978.

Husband specifically cites to *In re Marriage of Pate,* 591 S.W.2d 384 (Mo.App. 1979), to support his claim that the account should not have been held to be marital property. At issue in *Pate* was the disposition of certain certificates of deposit purchased during the marriage from funds drawn on an alleged joint checking account. Dr. Pate had come to the marriage with assets totalling $128,000, including a checking account used for general expenses and as a trading account for investments. Those investments consisted primarily of certificates of deposits and pass book accounts. Funds from those investments and "other income" were deposited in the account. Mrs. Pate, however, came to the marriage with a $2,000 savings account and an automobile. While employed, she deposited her paycheck in her savings account. Although Dr. Pate made arrangements so that Mrs. Pate could draw checks on his account, he testified that he did not intend to transfer ownership to her. There was no evidence as to whether the account was in both parties' names and Mrs. Pate testified that she had no knowledge of her supposedly joint ownership in the account.

The trial court ruled that Dr. Pate overcame the presumption of marital property by making a showing that the certificates of deposit were acquired by the husband in exchange for property he owned before the marriage, and thus, the certificates of deposit were his separate property. The trial court also held that Dr. Pate's checking account was his separate property. The trial court's rulings were upheld on appeal.

Although the facts in Pate are somewhat similar, there are important differences. Husband here deposited all of his income into the account in question. It was unclear what constituted "funds from investments and other income" in *Pate,* but Dr. Pate was retired and the implication was that the funds in the account were derived in exchange for property acquired prior to marriage. To hold otherwise would contradict § 452.330 RSMo.1978. In addition, wife here deposited some of her funds into the contested account while Mrs. Pate made no deposits to the account in question there. There was substantial evidence to support the trial court's ruling that the account was marital property.

Husband also claims that it is not the commingling of funds that renders property marital, but the placing of those funds in joint names. This argument is specifically refuted in § 452.330 RSMo.1978, which provides that all property acquired subsequent to marriage is presumed to be marital property *regardless* of whether title is held individually or by the spouses. Thus, a bank account in which both separate and marital funds are commingled is rendered marital property even if that account is maintained in the name of one spouse only. All cases cited by husband in support of his argument are inconsistent with that contention and need not be discussed further. *See Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App.1975); *Jaeger v. Jaeger, supra; Ledbetter v. Ledbetter,* 547 S.W.2d 214 (Mo.App.1977); *McLerran v. McLerran,* 562 S.W.2d 710 (Mo.App.1978); *Smith v. Smith,* 561 S.W.2d 714 (Mo.App. 1978); *Hebron v. Hebron,* 566 S.W.2d 829 (Mo.App.1978); *In re Marriage of Badalamenti, supra; Anderson v. Anderson,* 584 S.W.2d 613 (Mo.App.1979).

The following contested items were purchased with commingled funds from account no. 136–685–2 and are therefore marital property: the shares in the Dreyfus Money Market Fund; 300 shares of Storer stock; 400 shares of Allied Bancshares; and a $25,732 interest in the Keough plan. All other contested items merit further discussion.

## M.B. STURGIS, INC.

A manufacturer of hose assemblies and associated products, this company was founded by husband in 1956. He testified that the business was acquired with proceeds from inherited or separate property.

Since the company was acquired prior to this marriage, its stock should have been set aside as husband's separate property. See § 452.330(2) RSMo.1978.

Wife claims that she contributed her significant efforts to all the businesses during the marriage and was in part responsible for the increase in value of those assets. Thus, she argues the businesses should be held to be marital property. In support of that contention, Mrs. Sturgis cites *In re Marriage of Powers,* 527 S.W.2d 949 (Mo. App.1975), and *Burton v. Burton,* 23 Ariz. App. 159, 531 P.2d 204 (1975). Both cases are distinguishable.

In *Powers, supra,* a corporation that had not existed prior to the marriage of the parties was held to be marital property because the wife sold her home and put the proceeds into the new business shortly after the marriage. Under the facts in the present case, however, all of the businesses at issue had been owned by husband prior to marriage. Although wife did loan some money to M.B. Sturgis, Inc., she was being repaid with interest. There was no substantial unpaid financial contribution to a new business as in *Powers.*

In *Burton, supra,* the asset at issue was a farm. In addition to regular household chores, the wife did the bookkeeping for the farm operation, ran a tractor for the baling of 2,000–3,000 bales of hay a year, washed and groomed cattle for sales about seven times a year, and assisted in caring for hogs. She was not compensated for her work. The Arizona appellate court found that, under Illinois law, the wife had an equitable interest in the proceeds of the sale of the farm because the operation represented the joint earnings, work or savings of the parties. *Burton* is distinguishable from the facts in this case for two reasons. First, wife here was compensated for her work, and the evidence does not support the conclusion that wife's contribution was so extensive as to merit additional compensation. Second, the Illinois court had specifically interpreted their dissolution statute to provide that such participation, on the grounds of equity, gave rise to a marital

interest in the property. The Missouri dissolution statute makes no such provision, nor can it be interpreted in that way. See § 452.330 RSMo. There was nothing in evidence that would justify altering the nature of the property from separate to marital. The court's finding that this asset was marital property was clearly in error: there was no substantial evidence to support the trial court's ruling, and the court erroneously applied the law. *See Murphy v. Carron, supra.*

■ The demand note for $63,380 signed by M.B. Sturgis, Inc. and held by husband, is marital property because the money was advanced by husband from account # 136–685–2 during the marriage.

## STURGIS EQUIPMENT COMPANY OF KANSAS CITY

A distributor of fluid power products, this company was founded in 1972 by husband. It was funded with proceeds from inherited or separate property. Husband testified that any services rendered to the corporation by wife were part of her bookkeeping functions at M.B. Sturgis. Wife testified that she discussed the business with her husband, conferred with the bookkeeper of the corporation, visited at least one of the major suppliers and consulted with the general manager about the possibility of installing a computer.

■ Because the company was purchased prior to marriage, all of its stock is properly deemed to be the separate property of husband. See § 452.330(2). Wife's claimed participation in the business, although admirable, cannot be held to be something warranting an award of a financial interest in the business. (See discussion of *Powers* and *Burton, supra*).

The account receivable of Sturgis Equipment Company of Kansas City in the amount of $42,500 is partly the separate property of husband and partly marital property. Because $28,700 was owed to husband at the time of marriage, that amount is separate property. The $13,800

advanced during the marriage out of marital funds, is marital property.

## STURGIS AIR SERVICE

Sturgis Air Service is an individual proprietorship operated by husband and begun prior to marriage. It consists of one Beech Baron plane used for business travel only for M.B. Sturgis, Inc. and Sturgis Equipment Company of Kansas City. Time is logged and invoices are rendered to either of the two corporations for which the plane is utilized. At the time of the marriage, husband owed $46,000 principal and $12,326 interest on a note secured by the airplane. It was paid off during the marriage, apparently with funds from husband's personal checking account.

■ For the purposes of the division of marital property under § 452.330, all encumbered property acquired by a spouse prior to marriage remains separate property despite the fact that marital funds are used to discharge the debt. *See Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976). However, a spouse excluded from participation in the benefit of value appreciation is not without appropriate compensation. "[R]etirement of the ... debt in the husband's separate property by use of money constituting marital property is a relevant factor for the court to consider in dividing marital property. This is not to say that the separate property thereby acquires the status of marital property or that the other spouse is entitled to benefit from value increases in the separate property resulting from independent forces of the market place and the economy." *Hull v. Hull,* 591 S.W.2d 376, 381[7] (Mo.App.1979).

■ Thus, husband is entitled to have Sturgis Air Service set aside as his separate property. But the trial court, in its division of marital property, should determine to what extent marital funds were used to pay off the loan on this asset and take it into consideration, along with all other factors listed in § 452.330 RSMo.1978, when dividing the marital property.

## THE AMBLESIDE RESIDENCE

■ Prior to her marriage, wife owned a home to be referred to as the "Maryhill residence." Husband purchased that residence from wife after their marriage with commingled marital funds. He later purchased the "Ambleside residence," using a "gap" or interim loan of $135,000 and a regular loan of $35,000. A deed of trust on Maryhill was used to secure the $135,000 loan, and Ambleside served as security for the $35,000 loan. When the "Maryhill residence" was sold, those proceeds were used to pay off the gap loan. Payments on the $35,000 deed of trust note were made out of commingled marital funds.

Because the "Maryhill residence" was purchased from wife with marital funds, the proceeds from its sale must also be deemed to be marital property. Thus, any property acquired with those proceeds would also be deemed to be marital property. The "Ambleside residence" was, in effect, acquired with the proceeds from the "Maryhill residence." Therefore, it must be held to be marital property.

## REPUBLIC OF TEXAS CORP. STOCK

The record concerning the Republic of Texas stock is unclear. Husband owned 200 shares prior to the marriage according to the antenuptial agreement and he claimed those shares as separate property on his statement of assets which was received in evidence.

The trial court in its judgment distributed an unspecified number of shares valued at $6,300 to husband and 200 shares valued at $6,300 to wife. Husband in his brief states there were a total of 360 shares, 160 of which were received as a stock dividend. There is nothing in the record to support this and the information cannot be considered by this court. Husband in his statement of assets listed Republic of Texas stock of the value of $12,600 without specifying the number of shares. Apparently the trial court divided the value equally.

■ There was insufficient evidence to support a finding that any of the shares were marital property. Upon remand, ad-

ditional evidence should be taken to determine whether all or part is marital property and distribution made accordingly.

## LIFE INSURANCE POLICIES

Husband testified he held "four or five" life insurance policies which had a cash value of $20,000 at the time of the marriage. His statement of assets shows four policies. Premiums were paid from the marital funds during the marriage to bring the cash value of those policies to $28,000. This was supported by husband's statement of assets submitted to the trial court and received in evidence. The parties agree in their briefs that $8,000 of the value is marital property. Upon remand, the trial court should consider $20,000 of the cash value of the policies as the separate property of husband and $8,000 as marital property. *See In re Marriage of Pitluck*, 616 S.W.2d 861 (Mo.App.1981); *Hilger v. Hilger*, 570 S.W.2d 736 (Mo.App.1978).

## ALLIED BANCSHARES

█ In addition to the 400 shares of Allied Bancshares determined to be marital property because they were purchased during the marriage, husband claimed an indeterminate number of shares at a value of $14,720 as separate property. The 400 shares, as well as the indeterminate number of shares claimed by husband as separate property, were awarded to wife as marital property.

The trial court's judgment that all the indeterminate number of shares were marital property is not supported by substantial evidence. *See Murphy v. Carron, supra.* At least part of the indeterminate number of shares was acquired before the marriage and is husband's separate property.

Two hundred shares valued at $4,200 were listed by husband on the antenuptial agreement. On this statement of assets submitted to the trial court, husband listed an unspecified number of shares of Allied Bancshares valued at $4,200 on the date of the marriage, and valued at $14,720 as of May, 1981, after the dissolution petition was filed. He claimed these shares as separate property.

At first glance, it might appear that the unspecified number of shares valued at $14,720 as of May, 1981 and claimed as separate property are the same two hundred shares listed on the antenuptial agreement. On closer inspection, there arises the possibility that the shares valued at $14,720 actually number 320. The 400 shares of Allied Bancshares which are marital property were valued by husband at $18,400, or $46 per share. Turning to the indeterminate number of shares, $14,720 divided by $46 yields a quotient of 320 shares.

On remand, the trial court should determine the number of the unspecified number of shares valued at $14,720. If these shares number more than 200, then the court should set aside 200 to husband as his separate property and determine if the rest are marital property. If the number of shares equals only 200, then all 200 should be set aside to husband as his separate property. In either event, the other 400 shares are marital property.

The judgment must be reversed and remanded for further action by the trial court because the trial court erred in holding that the following assets were marital property: 200 shares of Allied Bancshares; 200 shares of Republic of Texas Corp. stock; 100 percent of the shares of stock in the Sturgis Equipment Company of Kansas City; 100 percent of the shares of stock in M.B. Sturgis, Inc.; the ownership of the individual proprietorship known as Sturgis Air Service; and a portion of the $28,000 cash value of four policies of life insurance.

Some modification is also required in the amount of marital interest awarded in husband's Keough and profit-sharing plans. At the time of marriage, the Keough plan was valued at $7,400. When the dissolution action was filed, its value was $33,132. The court awarded a $21,000 interest to husband as marital property. The marital interest should have been valued at $25,732, and the remaining $7,400 awarded to husband as separate property.

An interest of $12,000 in a profit-sharing plan was held to be marital property, when

in fact, at the time of the marriage, the plan had a $7,000 balance and at time of dissolution, its balance was $21,000. Therefore, an interest of $7,000 should have been set apart to the husband as his separate property, and $14,000 awarded as marital property.

The court's rulings concerning the other assets of the parties were correct. The 300 shares of Storer Stock, 400 shares of Allied Bancshares, the Dreyfus Money Market Fund shares, the promissory note from M.B. Sturgis valued at $63,380, the account receivable from Sturgis of Kansas City valued at $13,800, and the Ambleside residence are all marital property.

The parties have agreed upon the division of a substantial number of items of other personal property in the nature of household goods, furniture and furnishings. The trial court in its judgment gave effect to that agreement. Because no issue has been raised concerning compliance with the agreement and the division of the household goods, furniture and furnishings, it is unnecessary for this court to consider that aspect of the case.

Because this case is remanded for reconsideration of the classification of marital and nonmarital property, there is no need to consider either parties' complaint about the division of marital property. That division may be altered after consideration of the rulings in this opinion concerning separate and marital assets. A ruling by this court on the division of property as it now stands would have no value.

■ Similarly, the issues raised by the parties relating to the award of maintenance to the wife need not be considered. Upon remand the allocation of separate property will be changed and there will be a different division of marital property. The award of periodic maintenance to the wife must be reversed because of these major changes in the classification of assets. § 452.335.2(1) RSMo.1978. Upon remand, when the trial court considers the changes which are directed by this opinion and the changed division of marital property, it may

believe that the amount awarded as periodic maintenance should be changed.

■ The award of attorney's fees must also be reversed, not because the award of $15,992.01 was unreasonable but because one of the factors to be considered in the awarding of attorney's fees is the financial resources of both parties. § 452.355 RSMo. 1978. The financial resources of parties here may not be the same after the changed allocation of separate property and division of marital property upon remand. Therefore, the trial court should have an opportunity to re-assess the award of attorney's fees in light of any change in the financial circumstances of the parties.

The final issue raised by wife is her allegation that the trial court erred in overruling a motion to compel compliance with an agreement for the payment to the wife of temporary maintenance. The point has some merit.

After the parties separated, but prior to dissolution, they entered into an out-of-court temporary maintenance agreement under the terms of which husband would pay wife $1,500 a month in return for a promise to expedite the resolution of the case. There was no court order directing husband to make the payments, only the agreement between the parties. After making five payments, husband reduced the payment to $600 a month, apparently because he felt the case was moving too slowly. On November 5, 1981, wife filed a motion requesting the court to compel compliance with the agreement, but also requesting an increase in the monthly payments to $2,500.

■ Although brought to the trial court's attention during the dissolution hearing, the trial court never expressly ruled on the motion. The trial court's failure to rule on the motion constituted a denial. *See Potter v. Desloge,* 625 S.W.2d 927, 929[2, 3] (Mo.App.1981).

■ The temporary maintenance at issue was provided for by private contract rather than by judicial order or decree. Because the temporary maintenance was pro-

vided for by contract, wife was precluded from requesting the trial court to increase the contract amount. *See Summers v. Summers,* 222 S.W.2d 514 (Mo.App.1949). The request for an increase in the amount of the temporary maintenance was properly denied.

No request was ever made of the trial court to incorporate the agreement as the basis of a temporary maintenance award. The agreement remained purely a private contract.

 The first question then is whether an action for breach of a contract to provide temporary maintenance may be tried together with a dissolution action.

"A party asserting a claim to relief as an original claim ... may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party." Rule 55.06(a). This rule applies to dissolution actions. *See Coffey v. Coffey,* 485 S.W.2d 167, 172[7] (Mo. App.1972); *Builderback v. Builderback,* 241 Mo.App. 508, 244 S.W.2d 377, 379[4, 5] (1952).

Did the trial court err in denying wife's motion to enforce the temporary maintenance agreement? The trial court made the following finding of fact, which is supported by substantial evidence:

> In March, 1981, the parties, through their respective counsel, entered into an agreement wherein the Respondent would pay to Petitioner temporary maintenance in the sum of $1,500.00 per month in advance commencing April 1, 1981. Respondent paid said sums for the months of April, May, June, and July and August, 1981. Thereafter, Respondent paid Petitioner the sum of $600.00 per month commencing with the month of September, 1981. The amounts actually paid by Respondent is not in dispute.

Given this finding of fact, the trial court should have entered a judgment in favor of wife for the amount due and owing under the contract.

The judgment as it denies the motion to compel compliance with the temporary maintenance agreement is reversed and remanded. The wife is entitled to the amount specified in the contract. The judgment is affirmed as it denies the motion to increase the contractual maintenance amount. *See Summers v. Summers, supra.*

The parties do not contest the trial court judgment dissolving the marriage. That portion of the judgment is also affirmed. The judgment is reversed and remanded for further action by the trial court consistent with this opinion, as it relates to the awards of periodic maintenance, attorney's fees, the classification of separate property and marital property, the setting apart of separate property, the division of marital property, and the denial of the motion to compel compliance with the maintenance contract.

It is so ordered.

DOWD, C.J., and GAERTNER, J., concur.