IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

GEORGEANNE M. HOFER

Plaintiff,

v.

JAMES PATRICK HOFER

Defendant.

Shelby Chancery No. 23216-1
C.A. No. 02A01-9510-CH-00210

Hon. Neal Small

**FILED**

**Feb. 3, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DAVID E. CAYWOOD and DARRELL D. BLANTON, Memphis, Attorneys for Plaintiff.

ROSCOE A. FEILD, JR., Memphis, Attorney for Defendant.

*AFFIRMED*

Opinion filed:

TOMLIN, Sr. J.

Georgeanne M. Hofer ("Wife") filed suit for divorce in the Chancery Court of Shelby County against James P. Hofer ("Husband") seeking a divorce, division of marital property and alimony. Following a bench trial the chancellor awarded Wife a divorce on the ground of inappropriate marital conduct. In addition, he awarded Wife rehabilitative alimony for three years, ordered Husband to pay a portion of Wife's fees and expenses as alimony *in solido* and divided the marital property between the parties.

Both Husband and Wife have appealed. Husband has set forth some seven issues for our consideration. They are as follows:

I. Whether the trial court erred in finding two investment accounts owned by the Husband prior to the marriage, were marital property when the Husband exclusively controlled the accounts and the only deposits to the accounts were proceeds from his other separately owned properties also held by the Husband prior to the marriage.

II. In the alternative, even if the trial court correctly determined the accounts to be marital property, whether the trial court erred in failing to subtract the original values in the accounts and the deposit from the Huckleberry sale before dividing the remainder as marital property.

III. In the alternative, whether the trial court's division of the investment accounts was erroneous even if the court correctly determined the accounts to be marital property.

IV. The trial court erred in holding that proceeds from the sale of property owned by Husband prior to marriage became marital property

when the proceeds were placed in an investment account titled to and controlled only by the husband.

V. Whether the trial court erred in failing to apply the law of contracts to a reconciliation agreement and determined that the property owned by Husband prior to the marriage was marital property when both parties testified that an reconciliation agreement had been entered into by the parties in which Wife agreed to stop smoking marijuana in exchange for Husband adding Wife's name to his house and both parties testified that Wife did not stop smoking marijuana after Husband added Wife's name to his property.

VI. Whether trial court erred in awarding rehabilitative alimony to Wife when marriage had been of relatively short duration; Wife had previously removed more than $10,000.00 in cash from joint accounts and removed most of the family furniture when the parties separated; and at the time of the divorce, Wife was gainfully employed in same profession as she had been at the time of the marriages and was living on her lover's property.

VII. Whether an award of attorney fees was appropriate when Wife received substantial pendente lite support during the separation and was gainfully employed in her profession and living on her lover's property at the time of the divorce.

Wife has presented two issues for our consideration: Whether the trial court erred by finding that (1)Husband's business was entirely the separate property of Husband and by not finding that the increase in value during marriage was marital property; and (2)the automobiles of Husband were his sole and separate property not withstanding his admission that the majority of same were marital property. For the reasons hereinafter stated, we find no error and affirm.

The basic facts are undisputed. The parties were married in 1987 and separated in September 1993. No children were born of the marriage. At the time of the marriage Wife was 29 and Husband was 41. Husband worked at Piling and Repair Corporation ("P and R"), which was a family-owned business that Husband had purchased from his parents prior to the marriage. Wife held several jobs during the marriage, including working for Husband at P & R.

Prior to the marriage Husband had purchased a house in Memphis located at 1705 Autumn Avenue, (hereafter the "Autumn" property). Husband took title to the house in his own name. In 1989, subsequent to the marriage, Husband transferred ownership of the house to the parties jointly. At about this time the parties had

2

experienced marital difficulties, to the extent that Wife had filed for divorce. While there is a dispute as to the exact nature of what transpired, Husband agreed to and did transfer title of the house into both their names. As we shall see, the circumstances surrounding this transaction make up one of the issues on appeal.

Prior to Husband marrying Wife in the case before us, Husband and his former wife had purchased a home in Memphis on Huckleberry Street ("Huckleberry"). Pursuant to the terms of the divorce decree entered in this former marriage, the Huckleberry property was sold. This took place during the marriage of Husband to Wife. The funds from the sale of the Huckleberry property were paid over to Husband in February 1994, shortly after separation of Husband and Wife. The ramifications of this transaction will be examined further in this opinion.

On appeal our scope of review is de novo upon the record in the trial court. All findings of fact made by that court come to this court accompanied by the presumption of correctness, and, absent an error of law, unless we find that the evidence preponderates against these findings, we must affirm. T.R.A.P. 13(d).

### I. The Classification and Distribution of the Marital Property.

For the sake of convenience and judicial economy, inasmuch as the first four issues on appeal presented by Husband and the two issues presented on appeal by Wife deal with the classification and division of the parties' marital property, we will consolidate them into one major issue and treat each part separately.

This state is a dual property state, distinguishing between marital and separate property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 456 (Tenn. App. 1991). T.C.A. § 36-4-121(a) provides only for the division of marital property, thus it is incumbent upon the trial court to first classify the property of the parties. *McClellan v. McClellan*, 873 S.W.2d 350 (Tenn. App. 1993)(Citing *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. App. 1988)).

In the context of this case the parties' property is either "marital" or "separate."

3

"Separate property" is defined in T.C.A. § 36-4-121(b)(2)(A-D) as follows:

(2) "Separate property" means:
(A) All real and personal property owned by a spouse before
the marriage;
(B) Property acquired in exchange for property acquired
before the marriage;
(C) Income from and appreciation of property owned by
spouse before marriage except when characterized as marital property under subd
(D) Property acquired by a spouse at any time by gift,
bequest, devise or descent.

We begin our consideration of this issue by addressing the first two sub-issues, dealing with the classification by the court of two investment accounts owned by Husband as marital property rather than as separate property. Husband contends that as he owned these accounts prior to marrying Wife, they constitute separate property.

One we shall identify as the A.G. Edwards account and the other as the Hilliard Lyons account. At the time of the marriage the A.G. Edwards account had a balance of $56,801.52. By the same token, the Hilliard Lyons account had a balance of $39,800.00.

During the course of the marriage, Husband deposited in excess of $209,000.00 into the Edwards' account. These deposits came from his income earned in his employment at P and R. During the same period, he withdrew $183,000.00 from the A.G. Edwards account. This income earned by Husband as a direct result of his own efforts constituted marital property as it was acquired during the marriage, pursuant to T.C.A. § 36-4-121(b)(1)(A). Once Husband commingled these marital assets with his separate assets, the entire account became a marital asset in our opinion. Furthermore, during the marriage Husband withdrew funds previously deposited from these accounts, with these withdrawals being used for the benefit of both parties. There is nothing in the record to show that Husband treated any of the funds in these accounts as though he considered them to be separate.

In _Pope v. Pope_, 1988 WL 74615 (Tenn. App. 1988), the middle section of this court dealt with issues similar to those before us. In affirming the trial court's

4

judgment that certain property owned by Husband prior to the marriage had become marital property as a result of commingling and/or transmutation, the court stated:

> [t]wo related doctrines of community property have made their appearance in the marital property cases. The first of these is commingling, according to which separate property becomes marital property if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. The second doctrine is that of transmutation. This occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both of these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

Quoting H.Clark, _The Law of Domestic Relations_ § 16.2 (2d ed. 1987). See also _Sturgis v. Sturgis_, 663 S.W.2d 375, 379 (Mo.App.1983)

The chancellor found that the A.G. Edwards account was marital property and divided it 50/50 between the parties. The court also found that the Hilliard Lyons account was marital property, but divided it 60% to Husband and 40% to Wife. At the time of the divorce, the balance of the A.G. Edwards account was approximately $85,000.00 and the Hilliard Lyons account some $136,000.00. It is clear from the record that there was extensive commingling of funds by Husband during the course of the marriage and that funds were withdrawn from these accounts to be used for the benefit of the parties. This issue is accordingly without merit.

Next, Husband contends that even if the trial court was correct in treating these two investment accounts as marital property, nonetheless the court erred in treating the proceeds from the sale of what is known as the Huckleberry property as a marital asset, and not treating it as Husband's sole and separate property. The facts surrounding Huckleberry are these: Husband had been married and divorced prior to marrying Wife. The divorce decree in Husband's former marriage had certain provisions pertaining to the disposition of what was the marital residence in that marriage. After the marriage

5

of Husband and Wife, the parties lived in the Huckleberry property for a short time. Circumstances developed relative to the prior divorce that called for a sale of the Huckleberry property, with Husband and his former wife dividing the proceeds equally. This was done. Half the proceeds were paid to Husband, who deposited these funds in the Hilliard-Lyons account.

At this time, although Husband and Wife were separated, they were still "man and wife." Husband's contention here is that inasmuch as the parties were separated pending a hearing and divorce, that marital rights had terminated as of the date of separation. This is not the law as we know it. When Husband deposited these proceeds in an investment account which had been utilized for all intent and purposes by the parties during their marriage for the depositing of income earned by Husband and for the funding of expenses and other activities of the parties, the Huckleberry proceeds become marital property by virtue of this commingling, and the chancellor so found. In our opinion the evidence does not preponderate against this finding and thus we hold that this issue is without merit.

Husband contends in the alternative that even if the trial court correctly determined that the two investment accounts were marital property, nonetheless the court erred in its manner of dividing these two accounts as part of the overall division of the marital property to the parties. The record reflects that the A.G. Edwards account was divided equally and the Hilliard Lyons account was awarded 60% to Husband and 40% to Wife.

Our statutes provide that in divorce cases the court shall equitably divide the marital property of the parties. T.C.A. § 36-4-121(a)(1991). An equitable division however is not necessarily an equal one. _Barnhill v. Barnhill_, 826 S.W.2d 443, 456 (Tenn. App. 1991). In that regard this court in _Barnhill_ stated:

> Trial courts are afforded wide discretion in dividing the interests of parties
> in jointly owned property. Accordingly, the trial court's distribution will
> be given great weight on appeal, and will be presumed to be correct unless
> we find the preponderance of the evidence is otherwise.

*Id.* At 449.

The appellate courts are generally disinclined to disturb a trial court's division of marital property unless the distribution lacks proper evidentiary support or results from an error of law or a misapplication of the statutory requirements and procedures. *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

In stating his case, Husband relies in good measure on *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. App. 1988), contending that inasmuch as this was a marriage of short duration the marital property should not have been divided equally and the parties should have been restored to their pre-marriage financial condition. In our opinion, *Batson* is distinguishable for at least two reasons. First, the majority of the marital estate in *Batson* consisted of an increase in the value of Husband's separate property during the course of the marriage. Secondly, *Batson* did not involve the issues of transmutation or commingling.

In this case the record reflects that Husband has a much greater earning capacity and ability to accumulate assets in the future. Furthermore, Wife was shown to have made some contribution to the marriage, which included general homemaking duties such as cooking, cleaning, and caring for two step-children as well as taking part in various activities with Husband. Husband paid tribute to her, stating that she was "the CEO of a major household." In our opinion the evidence does not preponderate against the trial court's findings in this regard. This issue is accordingly without merit.

In regard to the distribution of marital property by the trial court, Wife contends, that the trial court erred in finding that Husband's business, P and R, was entirely his separate property and, in failing to find that the increase in value of the business during the marriage was marital property, thus subject to equitable division. The first aspect of this issue is a non-issue inasmuch as Wife concedes in her brief and there is nothing to the contrary that the business, P and R, was owned solely by Husband. The only issue we have to consider is whether or not the increase in value of the business during the marriage, determined to be $45,010.00, would be subject to a marital division if the

7

record would reflect that Wife had substantially contributed to the increase in value pursuant to T.C.A. § 36-4-121(c)(5). After reviewing the record in this regard, we are of the opinion that the evidence does not preponderate against the trial court's finding. This issue is without merit.

Finally, Wife complains that the chancellor erred in finding that the collection of Austin-Healey automobiles was Husband's separate property although in Husband's Local Rule 15 Affidavit or Proposal of Settlement, Husband stated that they were marital property. We find this to be a non-issue, for the final decree of the chancellor did not as Wife contends, find these automobiles to Husband's separate property, but to the contrary awarded them to Husband as a further division of marital property. Furthermore, in the division of marital property, we note that the chancellor awarded the 1988 Celica to Wife. This issue is resolved in favor of Husband.

## II. The Alleged Reconciliation Agreement.

By way of background, the parties marital residence, known as the "Autumn property" was found by the chancellor to be marital property. He awarded 50% to Husband and 50% to Wife. Husband contends that under the circumstances then and there existing at the time Wife's name was put on the title, the entire interest in this property should have been awarded to him.

The record reflects that the Autumn property was purchased by Husband prior to the marriage. Title was taken in his name alone. In 1989, Husband had Wife's name added to the title. Husband contends that his willingness to convey one half interest in this property to Wife was because of a "reconciliation agreement" entered into between the parties during their marriage. He further contends that Wife subsequently breached this agreement and that under contract law as a result of this breach he should be awarded outright title to this property. The nature of the "breach" that Husband contends took place was Wife promising, prior to the conveyance, to stop smoking marijuana and her subsequent failure to stop. Here follows Husband's testimony about the circumstances surrounding the transfer of title to the Autumn property:

8

Q: (by opposing counsel) And the house stayed in your name until August of 19 and 89?

A: (by defendant) That's correct.

Q: And then what happened then?

A: Well, when Georgeanne wanted something, she would deny me, even speaking to me, let alone sex, and she wanted that house in her name badly, and she went six weeks without, here again, even speaking to me, and she knew I was going to buy that West Range [West Raines] property. So, here again, just to try to bring some peace back in that house, I finally relented and put a quitclaim deed when I signed the paper on the West Range [West Raines] property.

On the other hand, Wife's version of this real estate transaction is as follows:

Q: (by opposing counsel) Tell me what you told him or tell me what you told him why he must transfer the title of that house to you in '89, whenever it was transferred.

A: (by Mrs. Hofer) I wasn't treated as a wife and I would like this marriage to work, and I wasn't a joint at that point on any accounts except for the marital joint account, and I didn't think that was fair. I took care of him. I took care of his children. I would drop the charges [of divorce] if he would learn to make this a complete marriage and control his temper, watch his drinking, start counseling, we'd go together, and to make joint on the house and to ease up on me a little bit.

Q: Did you offer to stop smoking marijuana at this point?

A: Yes, I did.

Q: But you didn't?

A: No, sir.

Q: Okay, now, he did not know, though, you had been to an attorney and had not--you had filed for divorce, but you told him that you would drop the charges, but he didn't know it. How did that happen?

A: I told him I had filed for divorce.

Q: Okay, that's when you told him that if he would transfer the house to you, you would drop the divorce. Is that right?

A: I told him after I had filed for divorce. I told him about filing for divorce.

Neither Husband nor Wife testified about entering into any kind of "reconciliation agreement," as now claimed by Husband. Rather, Husband testified in essence that this transaction took place in an attempt by him to normalize their strained relationship.

9

The evidence does not preponderate against the chancellor's finding. We hold that this issue is without merit.

### III. The Issue of Rehabilitative Alimony.

Husband contends that the chancellor erred in awarding Wife rehabilitative alimony in the amount of $800.00 per month for thirty-six months. Trial courts are given wide discretion in awarding alimony. *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. App. 1992). The appellate courts should defer to a trial court's award of alimony unless the evidence in that court preponderates against it. *Luna v. Luna*, 718 S.W.2d 673 (Tenn. App. 1986). Need of the innocent spouse and the ability to pay of the obligor spouse are two of the most important factors in determining the appropriate amount of alimony. *Barnhill v. Barnhill*, 826 S.W.2d 443, 455 (Tenn. App. 1991). Fault is also another substantive factor in determining an alimony award. *Duncan v. Duncan*, 668 S.W.2d 568 (Tenn. App. 1984).

The record reflects that Husband maintained a satisfactory income stream from which he could afford to pay rehabilitative alimony in the sum awarded. In addition, Wife's expenses greatly exceed her average monthly net income. To counter this Husband contends that the fact that Wife withdrew $10,000.00 from the parties' joint savings account and the relatively short nature of the marriage should preclude an alimony award.

Prior to making this award, the chancellor noted that there was plenty of fault on both sides, observing that the record reflected that Husband had on occasion beaten his wife and on another occasion forced her to find refuge with her mother while wearing nothing but her night clothes. He also noted that Husband drank excessively. In addition to the withdrawing of funds as hereinabove noted, Wife smoked marijuana on a regular basis, and after separation from Husband and prior to the divorce she "had been living almost openly with another man." Nonetheless, the court saw fit to award the divorce to Wife on the grounds of inappropriate marital conduct. There has been no appeal taken from the awarding of the divorce to Wife on these grounds. We note that

this finding by the court comes to us with a presumption of correctness and we cannot say that the evidence preponderates against it. We resolve this issue in favor of Wife.

#### IV. Alimony *In Solido*

The court below awarded Wife attorney fees in the amount of $15,000.00, plus $1,196.00 in expenses. The award of attorney fees in a case such as this is considered an alimony *in solido* award. <u>Gilliam v. Gilliam</u>, 776 S.W.2d 81 (Tenn. App. 1988). On appeal the appellate courts will not interfere with the trial court's decision to award attorney fees except where there is a clear showing that the court reached the wrong conclusion, with the result that manifest injustice would be done if the award was allowed to stand. <u>Hanover v. Hanover</u>, 775 S.W.2d 612, 618 (Tenn. App. 1989). The affidavit filed in support of Wife's claims for attorney fees demonstrates the substantial effort that had to be expended on behalf of Wife because of the litigious conduct of Husband. A contempt petition had to be filed because Husband failed to comply with a court order relative to temporary support. A Motion to Compel was filed due to Husband's failure to properly respond to discovery requests. Wife found it necessary to defend a Motion to Quash, which was denied. Wife's discovery deposition lasted two, full eight-hour days, nearly as long as the trial itself. Under these circumstances, we are of the opinion that the trial court did not abuse its discretion in awarding the attorney fees and costs complained of.

The judgment of the trial court is affirmed in all respects. Costs in this cause on appeal are taxed to Husband, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.

_____
CRAWFORD, P. J.          (CONCURS)

_____

11

FARMER, J.                    (CONCURS)